**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JOSEPH M. ANTIO,**

        **Plaintiff,**        **CIVIL ACTION NO. 08-cv-14933**

  **vs.**

                              **DISTRICT JUDGE PAUL D. BORMAN**

**COMMISSIONER OF**        **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

**I.**      **RECOMMENDATION:**    This Court recommends that Plaintiff's Motion for Summary Judgment (docket no. 14, 20) be DENIED, Defendant's Motion For Summary Judgment (docket no. 19) be GRANTED and the instant Complaint DISMISSED.

\*\*\*

**II.**      **PROCEDURAL HISTORY:**

Plaintiff filed an application for a period of disability and Disability Insurance Benefits on May 11, 2005, alleging that he had been disabled since December 10, 2004 due to neck and shoulder problems. (TR 12, 46). The Social Security Administration denied benefits. (TR 39-43). A requested de novo hearing was held on April 30, 2008 before Administrative Law Judge (ALJ) Thomas L. Walters who subsequently found that the claimant was not entitled to a period of disability or Disability Insurance Benefits because he was not under a disability at any time from December 10, 2004 through the date of the ALJ's May 30, 2008 decision. (TR 17-18, 229). The Appeals Council declined to review the ALJ's decision and Plaintiff commenced the instant action

for judicial review. (TR 3-5). The parties filed Motions for Summary Judgment and the issue for review is whether Defendant's denial of benefits was supported by substantial evidence on the record.

### III. PLAINTIFF'S TESTIMONY, MEDICAL EVIDENCE AND VOCATIONAL EXPERT TESTIMONY

#### A. Plaintiff's Testimony

Plaintiff was fifty-four years old at the time of the administrative hearing. (TR 234). Plaintiff has a high school equivalent education and past work experience including twelve to fifteen years as the head custodian in charge of three public school buildings. (TR 234-36). Plaintiff testified that in December 2004 he had neck problems which prevented him from working, including severe headaches and pain and stiffness. (TR 237).

When Plaintiff was examined for his neck impairment, it was discovered that he had torn his right rotator cuff and needed another surgery. (TR 238). Plaintiff testified that following the surgery on his right shoulder he continued to have pain. (TR 240-41). Plaintiff's neck pain continues to flare up three to five times a week and he has headaches two to three times a week, which he describes as constant, but not as bad as before. (TR 238-39). The headaches last from three to four hours to all day. (TR 239). Plaintiff takes Vicodin, Excedrin and a muscle relaxer to ease the pain, which reduces the pain to a tolerable level for a short time. (TR 239, 243). Plaintiff's medications also include an aspirin regimen, Cymbalta, a blood pressure pill and an anxiety pill. (TR 246). The Vicodin and muscle relaxers cause drowsiness. (TR 246). Plaintiff takes hot showers and uses hot towels and ice to relieve the neck pain. (TR 240).

Plaintiff described his right shoulder pain as a sharp pain going through his shoulder and a dull aching pain going down to his hands and three fingers. (TR 241). He has numbness in the

lower part of the right shoulder, down the arm and into three fingers. (TR 242). Plaintiff had left rotator cuff surgery in July 2005 and continues to have some pain and numbness, although less severe than on the right. (TR 242). For this reason he does a lot of activities with his left hand, despite being right handed. (TR 242). Plaintiff rates his left arm pain at a five or six on a scale of ten, right arm pain at an eight to nine at its worst, and neck pain at ten of ten occurring three to five times a week. (TR 244). Plaintiff performs a daily exercise program suggested by his doctor. (TR 244). He uses a treadmill for fifteen to twenty minutes daily. (TR 244). Plaintiff's pain keeps him from sleeping more than a couple of hours at a time and he occasionally sleeps sitting straight up on the sofa to avoid rolling on his arms. (TR 248). He takes a two-hour nap every day. (TR 249).

Plaintiff does limited cooking, including barbecuing, and he uses a wagon to take the trash out and bring wood into the house. (TR 249). He helps his wife with flowers in the yard, walks around the yard and pets his cat. (TR 249). He no longer fishes because he cannot hold the pole or throw the line and he has stopped riding his motorcycle and jet skis. (TR 67, 250). He occasionally uses his riding lawn mower for ten to fifteen minutes at a time. (TR 251). He cannot drive a car for more than one hour due to pain and sleepiness. (TR 251). He testified that he can only lift one and a half pounds, he struggles with a gallon of milk, drops things often, and can only button a couple of buttons on his shirt before his wife assists him. (TR 252). He needs assistance putting on socks, tying shoes and doing his hair. (TR 252-53). He can stand for ten minutes at a time before he needs to move, and cannot sit for more than fifteen minutes without needing to shift or get up. (TR 253).

  **B.**  **Medical Record**

Plaintiff underwent a left shoulder arthroscopic debridement in 1999 and a right shoulder rotator cuff repair in August 2001. (TR 158). On February 12, 2004 Plaintiff underwent a right foot talar bunionectomy. (TR 197). In November 2004 Thomas M. Keating, M.D., re-evaluated

Plaintiff's right shoulder following his complaints of shoulder and neck pain with work activity. (TR 158). The doctor reported full motion in both shoulders on examination with positive impingement signs and irritable with stress supraspinatus more on the right than left. (TR 158). A November 2004 MRI revealed a full thickness tear and interstitial tears of the right shoulder rotator cuff. (TR 159). The record contains additional examination notes and physical therapy notes from prior to Plaintiff's alleged onset date, which were also considered by the Court[1]. (TR 102-21, 135-38, 141-42). On January 5, 2005 Dr. Keating performed a right shoulder "video arthroscopy and rotator cuff repair arthroscopic-assisted through a mini-incision with Restore patch graft." (TR 186).

In March 2005 Dr. Keating noted that Plaintiff reported right shoulder pain and neck symptoms. (TR 162). On examination Dr. Keating reported that right shoulder motion was "excellent" and "nonirritable." (TR 162). In April 2005 the doctor noted that Plaintiff reported continued improvement of the right shoulder but noted right upper extremity pain and numbness. (TR 163). Right shoulder motion continued to be "excellent within a few degrees of full," girdle muscle strength was good, neck motion was full and shoulder was irritable at extremes in motion. (TR 163).

Plaintiff underwent electrodiagnostic testing on May 19, 2005. (TR 149-50). A needle EMG exam was normal. (TR 150). Frederick M. Vincent, Sr., M.D., found it unlikely that Plaintiff has a cervical radiculopathy or a true unequivocal carpal tunnel syndrome. (TR 149).

On July 15, 2005 Dr. Keating performed a left shoulder arthroscopy with arthroscopic recession coracoacromial ligament, arthroscopic subacromial bursectomy and arthroscopic assisted

---

[1] The transcript also contains records of two other individuals. (TR 165, 207-226).

4

rotator cuff repair. (TR 80-82). By October 2005 Dr. Keating noted that the left shoulder had excellent motion with internal rotation only to the back pocket level and had good motion in the right shoulder which still lacked full forward flexion by 20 to 25 degrees. (TR 84). Strength in both shoulders was decreased and the shoulders were irritable at the extremes of motion. (TR 84). The doctor noted that Plaintiff was to continue off work, recommended that he continue with supervised physical therapy, refilled Plaintiff's Darvocet and would reevaluate him in six weeks. (TR 84).

An agency evaluator completed a Physical Residual Functional Capacity Assessment form dated August 19, 2005 and concluded that Plaintiff can lift and/or carry a maximum of twenty pounds occasionally and ten pounds frequently, stand and/or walk six hours and sit six hours in an eight-hour workday and is limited in pushing and/or pulling with the upper extremities. (TR 127-34). Plaintiff was limited to occasionally climbing ladders, ropes and scaffolds, and crawling, and may frequently climb ramps and stairs, balance, stoop, kneel and crouch. (TR 129). Plaintiff was limited to reaching occasionally with the right upper extremity, frequently handling with the left hand, and could constantly finger and feel with both hands. (TR 130). Plaintiff should avoid concentrated exposure to extreme cold and humidity. (TR 131).

By February 2006 Dr. Keating noted that Plaintiff reported having shoulder pain directly related to activity and Plaintiff reported that he was able perform continuous light activity for fifteen to twenty minutes before pain prevented him from continuing and that he could generally remain active throughout the day as long as he was very cautious about his shoulders. (TR 85). On examination the doctor reported that "[s]houlder motion bilaterally is excellent." (TR 85). The shoulders were "mildly irritable at the extremes of motion and are irritable and weak with stress of shoulder girdle musculature." (TR 85). Plaintiff's strength was "at best fair." (TR 85). In August 2006 Dr. Keating reported that Plaintiff "continues to be active doing light activity. He is unable

5

to do any overhead activity or significant activity above chest level." (TR 86). The doctor concluded that Plaintiff would continue with limited activity and rehabilitation on his own and would be re-evaluated in the spring. (TR 86).

Plaintiff treated with Amarish S. Potnis, M.D., from January 1, 2007 through February 2008, the details of which are also set forth in the analysis below. (TR 90-101). In April 2007 Dr. Potnis noted Plaintiff's continued report of bilateral shoulder pain. (TR 92-93). The doctor noted that Plaintiff reported that he was symptomatic, but the current regimen was controlling symptomatology. (TR 92). A February 4, 2008 MRI of the right shoulder showed "motion artifact of multiple sequences" because Plaintiff "reportedly could not remain motionless due to pain." (TR 96). The impression was "[d]iscontinuous supraspinatus tendon" and "likely" re-tear of the tendon. (TR 96). An MRI of the cervical spine from the same date revealed "[m]ild degerative disk disease with straightening of the cervical curvature," "some mild hypertrophic changes and disk bulging with effacement of the thecal sac that is more evident at the C5-6 level, but . . . unchanged from previously." (TR 99). "Mild multilevel foraminal narrowing" was present. (TR 99). Dr. Keating did not recommend further right shoulder surgery and his February 14, 2008 examination report is set forth in the analysis below. (TR 87).

### C.   Vocational Expert

The Vocational Expert (VE) testified that Plaintiff's past work as a custodian was semi-skilled and heavy exertion as Plaintiff described it, with no transferable skills to sedentary work. (TR 255). The ALJ asked the Vocational Expert (VE) to consider an individual of Plaintiff's age, past vocational experience and education, limited to a range of light, unskilled work that does not involve lifting overhead, repetitive pushing, pulling, gripping, or grasping with the upper extremities and no use of air or vibrating tools. (TR 255). The VE testified that the available jobs

in the state of Michigan for such an individual would include night custodian (12,000 jobs), checker/packer (14,000 jobs) and assembler and sub-assembler (14,000 jobs). (TR 255). The VE testified that his testimony was consistent with the Dictionary of Occupational Titles (DOT). (TR 255). If the Plaintiff's testimony were found to be credible, the VE testified that he could not perform these jobs on a full-time basis, due to headaches and pain requiring daily rest periods of up to an hour and half. (TR 256).

## IV.   ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff met the disability insured status requirements through December 31, 2009, had not engaged in substantial gainful activity since December 10, 2004 and suffers from degenerative disease with recurrent rotator cuff tears of both shoulders and degenerative disease of the cervical spine, severe impairments, he does not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 14-15). The ALJ found that Plaintiff's allegations regarding the extent of his symptoms were not totally credible and although Plaintiff could not perform his past work, he has the ability to perform a limited range of unskilled light work and there are jobs that exist in significant numbers in the economy which Plaintiff can perform. (TR 15-17). Therefore he was not suffering from a disability under the Social Security Act from December 10, 2004 through the date of the ALJ's decision. (TR 17-18).

## V.   LAW AND ANALYSIS

### A.   Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525,

528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts").

### B.    Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

(1)    he was not presently engaged in substantial gainful employment; and

(2)    he suffered from a severe impairment; and

(3)    the impairment met or was medically equal to a "listed impairment;" or

(4)    he did not have the residual functional capacity to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f). If Plaintiff's impairments prevented him from doing his past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. *See id.* at § 404.1520(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

Plaintiff argues that the ALJ did not give proper weight to the opinions of treating physicians, the RFC is not supported by substantial evidence, the ALJ's decision is arbitrary, capricious and an abuse of discretion and that the Court should consider additional evidence not before the ALJ.

**C.  Analysis**

*1.  Whether the ALJ Gave Proper Weight To The Opinions of Plaintiff's Treating Physicians*

Plaintiff argues that "controlling weight was not given to the claimant's treating sources, i.e., surgeon and physiatrist." (Docket no. 14 at p. 7). It is well settled that the opinions and diagnoses of treating physicians are generally accorded substantial deference. Under 20 C.F.R. section 404.1527(d)(2), the ALJ must give a treating physician's opinion controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record. The Sixth Circuit has stated that

"[i]n general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters*, 127 F.3d at 529-30. The ALJ must give specific reasons for the weight given to a treating source's opinion. SSR 96-2p; 1996 WL 374188. "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). Dispositive administrative findings relating to the determination of a disability and Plaintiff's RFC are issues reserved to the Commissioner. *See* 20 C.F.R. § 404.1527(e). The ALJ "is not required to accept a treating physician's conclusory opinion on the ultimate issue of disability." *Maple v. Comm'r of Soc. Sec.*, 14 Fed. Appx. 525, 536 (6th Cir. 2001).

As Defendant pointed out, Plaintiff in his "argument" failed to identify any specific opinion the ALJ did not properly consider. Plaintiff states that the ALJ's

> [R]ejection of the lengthy treating histories of Dr. Potnis and Dr. Keating and their opinions that Mr. Antio is unable to perform any type of work is unfounded and against the evidence on the record. These are two physicians who have treated for years with Mr. Antio through three shoulder surgeries.

The ALJ cited extensively to both Dr. Potnis's and Dr. Keating's medical opinions and examinations. In his opinion, the ALJ specifically discounted Dr. Potnis's April 11, 2007 report that stated, "Overall he relates difficulty with household activities. Cannot really do it for prolonged periods of time. I do not think he is able to work to any significant degree." (TR 93). The ALJ correctly pointed out that the opinion is not supported by any clinical or other objective findings and that the opinion is "vague as to its precise meaning" and "does not provide any specific limitations." (TR 16-17). *See* 20 C.F.R. § 404.1527(d)(2). It is unclear whether Dr. Potnis was referring to Plaintiff's past work, classified by the VE as heavy, or all work, including light and sedentary work with limited overhead reaching. As the ALJ pointed out, this conclusion was not supported by other

notes in the report. For example, on the same date, Dr. Potnis noted that Plaintiff's strength was 5/5 in the bilateral upper extremities, and although there was limited range of motion of the shoulders and general tenderness along the shoulder and positive impingement signs with palpation, neck range of motion was "comfortable and pain free." Plaintiff reported bilateral shoulder pain at a level 8 on a scale of ten, but at a level 3 out of 8 with the current treatment regime. (TR 92).

On February 14, 2008 Dr. Keating noted that Plaintiff's work restriction was "off work." (TR 87-88). Again, this notation is unclear as to whether the doctor was referring to his prior work, or all work at any exertional level because the doctor also noted that Plaintiff "was employed as a custodian but has been unable to return to work." (TR 87-88). The doctor noted only "mild limitations" in right shoulder range of motion. (TR 87). The MRI of the right shoulder revealed considerable artifact related to the previous rotator cuff repair, significant fibrosis with the rotator cuff and "no convincing evidence of significant rotator cuff tear." (TR 87). The ALJ gave a specific and reasonable explanation, supported by substantial evidence, for rejecting these vague conclusions regarding Plaintiff being "off work" or not able to "work to any significant degree." The ALJ also pointed out Dr. Potnis's January 30, 2008 notes that Plaintiff again reported shoulder pain related having been lifting wood. (TR 94).

The ALJ correctly cited diagnostic studies, including MRIs in 2004 and 2008, which revealed only "mild" abnormalities. (TR 16, 102). The October 2004 MRI of the right shoulder revealed a full thickness rotator cuff tear, which was repaired. (TR 186). The same MRI reveals only mild arthritic change at the acromioclavicular joint. (TR 102). In February 2008 Dr. Keating concluded that most of the right shoulder "residual symptoms" were "related to rotator cuff insufficiency, right shoulder mild arthrofibrosis and scapular dyskinesia" and he would not presently

recommend further right shoulder surgery. (TR 87). The ALJ reasonably explained his findings regarding the physicians' statements.

To the extent Plaintiff tries to make an argument that the ALJ rejected the entire history of his treating physicians' opinions by failing to conclude that Plaintiff is disabled, that argument is without merit as evidenced by the record, the ALJ's citations to and discussion of the treating physicians' opinions and records, and Plaintiff's failure to identify the allegedly disabling opinions which the ALJ rejected.

## *2.     Whether the RFC Is Supported By Substantial Evidence*

Plaintiff argues that the ALJ's RFC "as stated in the hypothetical to the vocational expert does not reflect the record as a whole." (Docket no. 14 at p. 8). In part, Plaintiff may be confusing his burden to prove that he is disabled through step four with the ALJ's burden at step five and reliance on a VE's testimony in response to an accurate hypothetical question. *See* 20 C.F.R. § 404.1520(a)-(f); *see also Varley,* 820 F.2d at 779 (VE testimony as substantial evidence). The ALJ found that Plaintiff has the RFC to perform "a restricted range of unskilled light work[2] with no overhead work, no repetitive gripping or grasping, and no use of air or vibratory tools." (TR 15). All of these limitations were included in the hypothetical question to the vocational expert. (TR 255). "It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact." *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) (citations omitted).

Plaintiff argues that the RFC for light work is supported only by a single assessment dated August 19, 2005 and performed by a consultant who was neither a treating or examining physician

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. 404.1567(b).

and the consultant noted that there were no treating or examining source statements in the record at that time[3]. (Docket no. 14 at p.9 and TR 133). Again, Plaintiff's argument tellingly fails to identify contradictory evidence which the ALJ failed to consider in establishing his RFC. Plaintiff has the burden of proof through step four to establish that he is disabled.

The ALJ's limitation to no overhead work and restricted gripping and grasping address Dr. Keating's findings on February 14, 2008 that Plaintiff's shoulder motion was "irritable" above chest level, as well as Plaintiff's reports of pain at extremes of motion. (TR 85, 87). To the extent that Plaintiff argues that "there is absolutely nothing in the record, medical or otherwise, which indicates that [he] is able to do significant walking and standing," the burden is on Plaintiff to prove that he has this limitation. Plaintiff has not identified, and the record does not contain, medical evidence showing that Plaintiff has limitations related to standing or walking[4].

The ALJ's decisions shows that he properly considered the entire record. The ALJ's findings with respect to Plaintiff's RFC are supported by substantial evidence. "Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *See Casey*, 987 F.2d at 1233 (citing *Smith v. Secretary of Health & Human Servs.*, 893 F.2d 106, 108 (6th Cir.1989)).

Plaintiff argues that because Plaintiff was 54 years old at the time of the hearing, the ALJ should have exercised his discretion in considering Plaintiff under the Medical-Vocational Guidelines (the "Grid") as a person of "advanced age" (age 55 and over) instead of "closely

---

[3] The Physical RFC Assessment consultant noted that there was no "treatment or examining source statement(s) *regarding the claimant's physical capacities* in the file," there was, however, medical evidence, to which the consultant cited. (TR 127-33, emphasis added).

[4] Plaintiff's gait is noted as "stable without assistive device." (TR 92). As recently as January 2008 Dr. Potnis reported that Plaintiff's gait was "normal." (TR 94).

13

approaching advanced age" (age 50-54)[5]. Pt. 404, Subpt. P, App. 2; 20 C.F.R. § 404.1563. Had the ALJ done so, Plaintiff may have been found disabled if his skills do not transfer to light work. *See* 20 C.F.R. Ch. III, Pt. 404, Subpt. P, App. 2, Rule 202.06. The ALJ did not explicitly address the issue of Plaintiff's age categorization and whether he may fall into a borderline situation. The ALJ does, however, set forth Plaintiff's birth date and age in his decision and cite the applicable regulation. (TR 17). Plaintiff was more than just a few days or months from the higher age category. He was more than nine months from his 55th birthday at the time of the hearing and more than eight months away at the time of the ALJ's decision. (TR 234).

> Although ALJs are obligated by this text [20 C.F.R. § 404.1563(b)] not to apply the age categories mechanically and to consider whether use of an older age category would be appropriate in a borderline case, nothing in this language obligates an ALJ to address a claimant's borderline age situation in his opinion or explain his thought process in arriving at a particular age-category determination. *See Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 399 (6th Cir. 2008).

Plaintiff's argument that the ALJ erred when he failed to find Plaintiff disabled on the basis of his age must fail.

### 3.     *Whether the ALJ's Decision Was Arbitrary, Capricious And An Abuse Of Discretion*

Plaintiff argues that the ALJ's decision is arbitrary, capricious and an abuse of discretion. For the reasons set forth above, the Court finds that the ALJ's decision articulated a rational connection between the facts and the decision and was not arbitrary, capricious, or an abuse of discretion. *See Nagy v. U.S.*, 751 F.2d 826, 828 (6th Cir. 1985); and *Stephens v. Heckler*, 766 F.2d 284, 288 (7th Cir. 1985) ("Without question, . . . the arbitrariness of the decision the ALJs are called on to make implies that they have very wide latitude. When there is no one "right" answer to a legal

---

[5]Because the Court finds that the ALJ's RFC for light work is supported by substantial evidence, it need not reach Plaintiff's argument that he is disabled under the Grid because of his age and an alleged ability to do no more than sedentary work.

14

dispute, it is difficult to say that selection of any one outcome is legal error."). "It is the rare case, the exception, in which every piece of evidence points incontrovertibly towards the holding." *Phillips v. Sec'y of Health & Human Servs.*, 812 F.2d 1407 (6th Cir. 1987). The ALJ's decision was supported by substantial evidence in the record and his findings were articulated in his decision.

### *4.     Whether the Court Should Consider Additional Evidence*

Plaintiff attached to his Brief four medical records totaling five pages and identified as "Exhibit A." (Docket no. 14). In his brief, Plaintiff refers to these records by stating that the "January 10, 2007 letter to the Appeals Council was included in the record. It does not appear the other medical records submitted to the Appeals Council by Mr. Antio's prior counsel were included. They are attached as Exhibit 'A.'" (Docket no. 14).

In cases where, as here, the Appeals Council declines to review the ALJ's decision, judicial review is limited to the evidence that was part of the record before the ALJ. *Cotton v. Sullivan*, 2 F.3d 692 (6th Cir. 1993); *Casey*, 987 F.2d at 1233; *Wyatt v. Sec'y*, 974 F.2d 680, 685 (6th Cir. 1993). Furthermore, under 20 C.F.R. § 404.970(b), "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision."    The "court is confined to review evidence that was available to the Secretary, and to determine whether the decision of the Secretary is supported by substantial evidence." *Wyatt*, 974 F.2d at 685 (*citing Richardson*, 402 U.S. at 401). The court may still remand the case to the ALJ to consider this additional evidence but only upon a showing that the evidence is new and material and "that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). This is referred to as a "sentence six remand" under 42 U.S.C. § 405(g). *See Delgado v. Comm'r of Soc. Sec.*, 30 Fed. Appx. 542, 549 (6th Cir. 2002). The

15

party seeking remand has the burden of showing that it is warranted. *See Sizemore v. Sec'y of Health and Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988). "In order for the claimant to satisfy his burden of proof as to materiality, he must demonstrate that there was a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore*, 865 F.2d at 711 (*citing Carroll v. Califano*, 619 F.2d 1157, 1162 (6th Cir. 1980)); *see also Cotton v. Sullivan*, 2 F.3d 692, (6th Cir. 1993) ("Where a party presents new evidence on appeal, this court can remand for further consideration of the evidence only where *the party seeking remand* shows that the new evidence is material.")(emphasis added)(citations omitted). "Evidence of a subsequent deterioration or change in condition after the administrative hearing is deemed immaterial." *Wyatt*, 974 F.2d at 685 (*citing Sizemore*, 865 F.2d at 712).

Plaintiff did not request a remand of this case pursuant to sentence six of 42 U.S.C. § 405(g) until Defendant brought it to his attention in the Response brief, and Plaintiff then made the request in his Reply. (Docket no. 20). All of the documents post-date the ALJ's May 30, 2008 decision and Plaintiff has offered no reason for the production of these records after the ALJ's decision. Plaintiff has also alleged that these "new reports . . . corroborate all of the precious documentary records . . . ." (Docket no. 14 at p. 13). The Court finds that Plaintiff has not shown good cause for the failure to produce these documents for inclusion in the hearing before the ALJ and the material is neither new nor material. Plaintiff has not shown that a sentence six remand is appropriate in this instance. **VI.   CONCLUSION**

The ALJ's decision was within the range of discretion allowed by law and there is insufficient evidence for the undersigned to find otherwise. Plaintiff's Motion for Summary Judgment (docket no. 14) should be DENIED, Defendant's Motion for Summary Judgment (docket no. 19) should be GRANTED and the instant Complaint DISMISSED.

**REVIEW OF REPORT AND RECOMMENDATION**

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: February 05, 2010         s/ Mona K. Majzoub
                                 MONA K. MAJZOUB
                                 UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: February 05, 2010  s/ Lisa C. Bartlett
 Case Manager